# B'ham Ry. L. & P. Co. *v.* Barrett.

## *Injury to Passenger.*

(Decided November 21, 1912.   Rehearing denied December 17, 1912.
60 South. 263.)

1. *Negligence; Pleading; Special and General Averments.*—Where a complaint for injuries specifies particular acts or omissions of the defendant which are alleged to constitute the negligence relied on, it is subject to demurrer unless such acts in themselves suggest negligence; but if the complaint merely states the fact and the res gestæ of the injury without specifying the acts or omissions relied on, the general averment that the plaintiff was injured as a proximate result of the defendant's negligence in respect to the duty owed to plaintiff it is sufficient, whether it counts on wanton or simple negligence.

2. *Pleading; Grammatical Error; Demurrer.*—Where the complaint charges wantonness of defendant's servants or agents and then alleges that while acting within the line and scope of "his" employment, "he" wantonly inflicted the injury complained of the grammatical error was not reached by a demurrer that the count did not state a cause of action, did not show a violation of duty, did not show negligence as a matter of law, and did not show a wanton or willful act.

3. *Carriers; Passengers; Care Required.*—A charge asserting that the carrier was required to exercise the highest degree of care known to human skill and foresight, and was liable for the slightest degree of negligence, imposed on the carrier a too high degree of care, and its giving was erroneous.

4. *Same.*—Although carriers of passengers are bound, in respect of their duty to carry safely, to exercise the highest degree of care, skill and diligence, and are liable for the slightest degree of negligence proximately resulting in injury, the term "highest degree of care" is a relative one and means the highest degree required by law in any case where human safety is at stake—the highest degree known to usage and persons engaged in the same business by similar means or agencies—but does not mean that every possible or conceivable act of care or precaution which might increase or even assure the safety of a passenger must be taken but only such as are reasonable under the circumstances—that is, reasonably consistent with the practical operation of the carrier's business.

5. *Same; Contributory Negligence.*—It is not negligence, as a matter of law for a passenger on a street car to arise from the seat when the car is slowing down for a station and go on the platform preparatory to alighting when the car stops at the station.

6. *Same.*—A charge asserting that if a passenger was injured in the manner and form alleged in her complaint as a proximate con-

[B'ham. Ry. L. & P. Co. v. Barrett.]

sequence of the negligence of the defendant as alleged, and she was not guilty of contributory negligence, she was entitled to recover was proper.

7. *Same; Sudden or Unusual Jerk.*—Any starting or stopping of a car with a sudden or unusual jerk or movement while the passenger is alighting, whether at a stopping place or not and whether known to defendant's servants or not, is not per se actionable negligence; whether or not it is so depending on the circumstances of time and place, or on the knowledge of carrier's responsible agents that they may injure an exposed passenger.

8. *Same; Evidence.*—Where a witness for defendant had stated that another passenger got off of the car at the same place that plaintiff did, and about the same time, and had testified that the car was stationary when such passenger alighted and afterwards testified that it was moving, defendant was entitled to ask the witness further whether such passenger got off the car before or after plaintiff fell.

9. *Charge of Court; General Terms.*—A charge asserting that the plaintiff was entitled to recover if the jury found that the material averments of the first count of her complaint were true, and she was not guilty of contributory negligence, was not fatally defective for generality and if deemed misleading could have been explained by requested charge.

10. *Trial; Offer of Proof.*—Where a question on its face calls for evidence which will be clearly relevant and competent and the witness appears to be qualified to testify from knowledge of the matter inquired about the sustaining of an objection thereto must be deemed erroneous and prima facie prejudicial, where there is no offer of further proof.

11. *Witnesses; Competency.*—Although a witness is presumed to be competent unless the contrary is made to appear, he is not presumed to be qualified by knowledge and hence the burden is on his proponent to show that the witness has such knowledge, or has had the opportunity to know the matters whereof he is called to testify, which may be established circumstantially as well as by direct affirmation.

12. *Same.*—Where a witness had seen a plaintiff alight from a car at the time she was injured it sufficiently appears that he had sufficient knowledge to testify whether another passenger who alighted from the car about the same time, alighted before or after the plaintiff.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by Sadie C. Barrett against the Birmingham Railway, Light & Power Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The following is the complaint: Count 1: "Plaintiff claims of the defendant, a private corporation, the sum of $10,000 damages in this: That on and prior to the 25th day of June defendant was a common carrier of passengers for reward between the towns of Ensley and Wylam, in said state and county, and that on said date plaintiff was a passenger on one of defendant's cars, her destination being Wylam, Alabama, and while engaged about its carriage as such, and while plaintiff was in the act of alighting from said car, by reason of a sudden or unusual jerk of said car, the plaintiff, a passenger on said car, was thrown with great force and violence therefrom, and injured as follows: [Here follows catalogue of injuries and damages.] plaintiff avers that her said injuries were proximately caused by the defendant in the negligent manner in which it run or operated its said car." Count 2: Same as 1, down to and including the allegations of injuries and damages, and adds: "Plaintiff avers that her said injuries were proximately caused by the wantonness of the defendant's servants or agents in charge of the operation of said car, and while acting within the line and scope of his employment, in that he wantonly inflicted the injuries upon the plaintiff while engaged in and about her carriage as such passenger."

The demurrers were that the first count does not state a cause of action, it does not appear that defendant violated any duty owing to plaintiff, that the facts relied upon do not show negligence as a matter of law, and that it does not appear that there was any wanton or willful act. The demurrers were likewise interposed to the second count.

The following charges were given for the defendant: (1) Set out in the opinion. (2) "The court charges the jury, if they are reasonably satisfied from the evidence

that the material averments of the first count of Mrs. Barrett's complaint are true, and that she was not guilty of contributory negligence, then you should find for the plaintiff." (3) "It is not negligence as a matter of law for a passenger on a street car to get up from her seat when a car is slowing down for the station, and go upon the platform preparatory to alighting therefrom, when it stops at the station." (4) "If the jury are reasonably satisfied from the evidence that the plaintiff was injured in the manner and form alleged in the complaint, as a proximate consequence of defendant's negligence as alleged therein, and that she was not guilty of contributory negligence, then you must find a verdict for the plaintiff." (5) "If the jury is reasonably satisfied from the evidence that the car was started or stopped with a sudden or unusual jerk as alleged, while plaintiff was in the act of alighting from the car, and she was guilty of no contributory negligence, and such jerk proximately caused her injuries, you must find a verdict for the plaintiff."

TILLMAN, BRADLEY & MORROW and CHAS. E. RICE, for appellant. The first count does not state a cause of action.—*Johnson v. B. R., L. & P. Co.*, 149 Ala. 533; *Mobile L. & R. R. Co. v. Bell*, 153 Ala. 92; *B. R., L. & P. Co. v. Parker*, 156 Ala. 252; *B. R., L. & P. Co. v. Weathers*, 164 Ala. 28. The pertinent averment of the count discussed in the case of *B. R., L. & P. Co. v. McGinty*, 158 Ala. 413, is so different from the case at bar as to render that case not an authority here. The court also erred in overruling demurrers to count two.—*B. R., L. & P. Co. v. Bennett*, 144 Ala. 272; *Same v. Jung*, 161 Ala. 475; *Same v. Glover*, 142 Ala. 498; *A. C. R. R. Co. v. Humphries*, 53 South. 1013. Charge one given for plaintiff requires a too high degree of proof.—*M.*

& E. R. R. Co. v. Malette, 92 Ala. 315; G. & A. U. Ry. Co. v. Causler, 97 Ala. 237; Sou. Ry. Co. v. Burgess, 143 Ala. 367; A. C. G. & A. Ry. Co. v. Bates, 155 Ala. 347. The facts constituting contributory negligence are not stated in the charge numbered two given for plaintiff and rendered the charge bad.—A. G. S. R. R. Co. v. McWhorter, 156 Ala. 283. The fourth plea was good as an answer to count two and the demurrer was improperly sustained.—Pace v. L. & N. R. R. Co., 166 Ala. 523; City of Montgomery v. Wyche, 53 South. 789. On the same authority the court erred in sustaining demurrers to plea six as an answer to the second count. Counsel discuss assignments of error relative to the refused charges, and base their insistence of error upon authorities cited, supra.

Frank S. White & Sons, for appellee. The first count was not subject to the demurrers. All the cases from Armstrong's Case, 123 Ala. 244 to that of Birmingham Railway, Light & Power Company v. Oden, 51 South. 240. The fifth plea was subject to demurrer. —Creaola Lumber Company v. Mills, 149 Ala. 482; B. R., L. & Power Co. v. Hawkins, 153 Ala. 88; Same v. Lee, 153 Ala. 80; Same v. Anderson, 163 Ala. 74. The charge as to degree of care required was not erroneous nor was the third charge rendered erroneous because of the failure to hypothesize the proximate cause of the injury.—S. S. S. & I. Co. v. Stewart, 55 South. 788; B. R., L. & P. Co. v. Bynum, 139 Ala. 397. It is the duty of carriers of passengers to see and know that its passengers have alighted before the car is started.— B. R., L. & P .Co. v. Watkins, 120 Ala. 149; Same v. James, 121 Ala. 120; Same v. Girod, 146 Ala. 10. There was no error in the refusal of the court to permit the witness to testify whether the plaintiff alighted or

whether another got off before or after the plaintiff alighted and fell. In any event it was the duty of counsel to inform the court as to the evidence expected. —*B. R., L. & P. Co. v. Selhorst,* 165 Ala. 481; *Ross v. The State,* 139 Ala. 144; *Hill v. The State,* 156 Ala. 8.

SOMERVILLE, J.—1. It is well settled that, when a complaint for personal injuries specifies particular acts or omissions of the defendant as constituting the negligence upon which the action is founded, the complaint is insufficient on apt demurrer, unless such acts in themselves show or suggest negligence, and a general averment of negligence does not cure the defective specification.—*Birmingham O. & M. Co. v. Grover,* 159 Ala. 276, 281, 48 South. 682; *B. R., L. & P. Co. v. Bennett,* 144 Ala. 372, 39 South. 565. But where the complaint merely states the fact and res gestæ of the injury, not imputing the defendant's negligence to them, and without specifying the negligent acts or omissions relied on, a general averment that the plaintiff was injured as a proximate result of the negligence of the defendant in respect to the duty owed to the plaintiff is sufficient. And this principle, of course, applies to counts for wanton as well as for simple negligence. Of this character are the cases of *B. R., L. & P. Co. v. Jordan,* 170 Ala. 535, 54 South. 280, and *B. R., L. & P. Co. v. Gonzalez,* 61 South. 80, where the complaints were substantially like the first count of the complaint in the instant case. On the authority of those cases we hold that both counts of this complaint were sufficient, and that the demurrers thereto were properly overruled.

2. The second count, after alluding to the wantonness of defendant's servants or agents (in the plural), charges that while acting within the line and scope of "his" employment "he" wantonly inflicted, etc. This,

however, is a mere grammatical slip, perhaps a typographical error, and, if a demurrable defect at all, is not reached by the grounds of demurrer exhibited.

3. At plaintiff's request the trial court gave to the jury the following charge: "It is the duty of a street car company to exercise the highest degree of care known to human skill and foresight in regard to the carriage of its passengers, and the carrier is liable for the slightest degree of negligence." A charge that "the law requires the highest degree of care and diligence and skill by those engaged in the carriage of passengers by railroads known to careful, diligent, and skillful persons engaged in such business" was approved in *M. & E. Ry. Co. v. Mallette,* 92 Ala. 209, 215, 9 South. 363, 365, with the observation of McClellan, J., that "this is the universal doctrine of the courts and text-writers." In *A. G. S. R. R. Co. v. Hill,* 93 Ala. 514, 520, 9 South. 722, 724 (30 Am. St. Rep. 65), it was said that "the law imposes upon common carriers the duty of exercising the highest degree of care, skill, and diligence in the transportation of passengers, and holds them responsible for the consequences of the slightest negligence resulting in injury," and a charge that the law requires "strict diligence" of such carriers was held to be well within the rule. In *G. & A. U. Ry. Co. v. Causler,* 97 Ala. 235, 12 South. 439, after citing the foregoing and other cases and several leading text-writers, the conclusion was: "We adhere to the principle so often stated by this court, and hold that only skillful and reasonably prudent persons should be placed in control of, or in responsible positions on, trains which transport passengers for hire, and that the highest degree of care and diligence is exacted of them in the performance of their several duties and functions. The slightest negligence on their part caus-

ing injury to a passenger will render the railroad company liable." In that case a charge imposing liability on the carrier "because its agents failed to take all such precautions to avoid the injury as would be suggested by the highest degree of care, skill and diligence, *by men of extraordinary care, skill and diligence* in carrying passengers by dummy line railways," was held erroneous on account of the two exacting requirement of the italicized clause.

/The Alabama cases are again reviewed by Justice Denson in *Southern Ry. Co. v. Burgess,* 143 Ala. 364, 42 South. 35, and a charge that the carrier owes to passengers "the duty to exercise the highest degree of care, skill, and diligence known to very careful, skillful, and diligent persons engaged in like business" was held not erroneous. In *Southern Ry. Co. v. Cunningham,* 152 Ala. 147, 44 South. 658, a charge that the carrier is bound "to exercise the strictest vigilance and the highest degree of care * * * that the means of conveyance employed and the circumstances would permit" was approved. In *Irwin v. L. & N. R. R. Co.,* 161 Ala. 489, 50 South. 62, 135 Am. St. Rep. 153, 18 Ann. Cas. 722, it was said by Mayfield, J., arguendo: "The law is very strict and stringent as to the duties it imposes upon common carriers for the safety of passengers; * * * [but] every passenger must and does assume the risks incident to the mode of travel he selects, when they cannot be avoided or prevented by the utmost care and skill on the part of the carrier." The carrier was there held not liable for injury to its passenger from a missile thrown through the car window, because such an assault could not have been reasonably anticipated or provided against. So in *Ala. City, etc., Ry. Co. v. Sampley,* 169 Ala. 372, 53 South. 142, it was said, by Sayre, J., that "common carriers

are obliged, not only to carry passengers safely, but also to conserve by every reasonable means their comfort and safety throughout the journey."

From the several decisions above referred to we deduce these principles: (1) Common carriers of passengers are bound, with respect to their undertaking to safely carry them, to exercise the highest degree of care, skill, and diligence, and are liable to passengers for the slightest degree of negligence proximately resulting in injury to them. (2) The "highest degree" of care, skill, and diligence is a relative term, and means the highest degree required by the law in any case where human safety is at stake, and the highest degree known to the usage and practice of very careful, skillful, and diligent persons engaged in the business of carrying passengers by similar means and agencies. (3) It does not mean that every possible or conceivable care and precaution which might increase, or even assure, the safety of the passenger, must be taken, but only such as are reasonably practicable under the circumstances; i. e., reasonably consistent with the practical operation of the carrier's business. These principles are in full accord with the general, if not universal, consensus of judicial opinion.—6 Cyc. 591, b; 2 White's Personal Injuries on Railroads, p. 583; 2 Hutchinson on Carriers (3d Ed.) §§ 893-896; 2 Wood on Railway Law, §§ 301-313; 4 Elliott on Railroads (2 Ed.) 1585. We are satisfied that the language of the charge under consideration, though somewhat inapt and obscure in meaning, exacts of carriers a higher degree of care than the law requires of them, and that the trial court erred in thus instructing the jury. Obviously many things conducive to safety may be known to human skill and perceptible to human foresight, and yet the most careful and skillful carriers may seldom

or never use such means or precautions because they are entirely impracticable, and wholly inconsistent with the rational operation of their business. We note that this identical charge was before the Court of Appeals in another branch of this same case (*B. R., L. & P. Co. v. Barrett,* 4 Ala. App. 247, 58 South. 760), and was condemned by that court. A clear and correct discussion of the matter will be there found in the opinion of Pelham, J.

The second written charge given for plaintiff required a verdict for her if the jury found that "the material averments" of the first count were true, and that she was not guilty of contributory negligence. If this charge had any tendency to mislead the jury as to the proof of plaintiff's case, defendant should have requested an explanatory charge. The generality of the allusion to contributory negligence was favorable to defendant, and it cannot complain thereat.

The third and fourth written charges state correct propositions of law, and were properly given.

The fifth written charge in effect instructs the jury that any starting or stopping of the car with a sudden or unusual jerk or movement while plaintiff was alighting from the car at any point, whether a stopping place or not, and whether known to defendant's servants or not, was per se actionable negligence if it proximately injured plaintiff. As several times declared by this court, such movements are not per se negligent, and their culpability depends upon the circumstances of time and place, or of knowledge of defendant's responsible agents that they may injure an exposed passenger.—*Mobile L. & R. Co. v. Bell,* 153 Ala. 90, 45 South. 56; *B. R., L. & P. Co. v. Parker,* 156 Ala. 251, 47 South. 138. It seems clear that the giving of this charge was prejudicial error.

It was competent for defendant to ask its witness Wrenn to "state whether or not Mr. Eubank got off the car before or after Mrs. Barrett (the plaintiff) fell." The witness had stated that Eubank got off the car at the same place plaintiff did, and about the same time; and he had first stated that the car was stationary when Eubank alighted, but afterwards that it was then moving. The relation of the fact inquired for to the issues involved is obvious and direct, and the question should have been allowed.

Other assignments of error need not be noticed. For the errors pointed out, the judgment will be reversed and the cause remanded.

Reversed and remanded. All the Justices concur, except Dowdell, C. J., not sitting.

## ON REHEARING.

An examination of the authorities cited by appellee in support of the correctness of the charge as to the degree of care to be exacted of carriers of passengers in the conduct of their business does not disclose any which in fact supports the charge which we have condemned. An example of their inaptitude is found in the quotation from Nellis on Street Railway Accident Law, § 6, p. 47: "When the passenger is in the exercise of ordinary care, the degree of care required on the part of the carrier to secure his safety must be the highest degree of care, reasonably to be expected from human vigilance and foresight in view of the mode and character of the conveyance in use, and reasonably consistent with the efficient operation of the road and practical prosecution of the business of the carrier." This does not support the condemned charge, but does fully support our views as originally expressed. It is

claimed that the charge was copied almost word for word from 2 Brickwood Sackett, Instruction to Juries, p. 1130. But the charge there approved is this: "The jury are instructed that common carriers of passengers are required to do all that human care, vigilance, and foresight can reasonably do, in view of the character and mode of conveyance adopted, to prevent accidents to passengers." The departure from this language was radical, and needs no comment. It may be, as complained by counsel, that we are drawing a fine distinction, but the law is full of such distinctions, and, indeed, without them no principle could long survive the minutely graduated encroachments which constantly threaten their integrity. In regard to the other condemned charge, we are now inclined to the view urged by counsel that, as applied to the evidence with respect to the place and circumstances of the alleged injury, its giving was not erroneous, because not in fact misleading.

It is insisted that in holding that the trial court committed reversible error in sustaining plaintiff's objection to the question propounded by defendant to the witness Wrenn, there being no statement by defendant's counsel informing the court what answer was expected from the witness, we are overriding a long line of our decisions to the contrary.

In view of the frequent misconception of the rule established by our decisions on that subject, a brief review of them here may be both timely and useful. It appears that the first definite statement of the rule was made in *Burns v. State*, 49 Ala. 370. A witness had testified that the defendant came to him and said "that he wanted them to go with him, to help take care of the deceased, whom he had shot." The defendant then asked the witness "to state all that he (defendant) said

at that time." On the state's objection the question was excluded. Brickell, J., said: "The bill of exceptions does not inform us what the prisoner said at the same time, and in the same connection, which the court declined to permit him to give in evidence. Though it may have been part of the same conversation of which the state gave evidence, we cannot say that it had any reference to the killing, or to the circumstances attending the killing; nor can we say that its exclusion did not benefit, rather than prejudice, the prisoner. An exception to the admission or rejection of evidence should always disclose the evidence admitted or rejected, or a revising court cannot intelligibly (intelligently?) pass judgment on it." In *Stewart v State,* 63 Ala. 199, dealing similarly with the same question, it was said, per Stone, J.: "The question * * * which the witness was not allowed to answer was very general in its terms. Almost anything the accused may have said * * * would have been responsive to it. The circuit court was not informed what was expected to be proved by this witness; nor can we know whether the answer would have been legal evidence or not." So in *Allen v. State,* 73 Ala. 23, it was said by the same justice: "We are not informed what would have been the answer of the witness to the questions which the court disallowed. For aught that we can know, the answer may have been immaterial, foreign to the issue, or otherwise illegal. * * * To put the court in error, the record should inform us what answer the witness was expected to give. As the question arose on cross-examination, the interrogatory itself might have disclosed the answer expected. And, when the question arises on direct examination, counsel can inform the court what he proposes to prove."—In *Roberts v. State,* 68 Ala. 515, 524, the rule is thus expounded by

Somerville, J.: "We cannot see that the court erred in excluding the question propounded at the instance of the accused, asking 'what businss Rankin (the deceased) had been engaged in? The question was not answered, nor was it stated what was proposed to be proved in response to it. It was too general, moreover, to authorize us to infer that the answer, if allowed to be made, would have been either relevant, material, or beneficial to the defendant."

With these several former statements of the rule clearly in mind, a definite restatement of the rule was made in *Phoenix Ins. Co. v. Moog,* 78 Ala. 284, 308 (56 Am. Rep. 31), in the following language, per Somerville, J.: "The exclusion of the several questions propounded by the defendant to the witness Cook was clearly erroneous. The true rule on this subject is as follows: If a question is propounded to a witness on the stand, the answer to which is prima facie relevant and legal testimony, and the court refuses to allow the witness to answer, this is error, for which a revarsal will lie; for the reason that 'the injury to the party consists in the refusal of the court to permit the answer to be given, and he can do nothing more to prove the wrong done him than to show that he has asked a legal question, the answer to which, by the action of the court, was denied him.'—*Nailor v. Williams,* 8 Wall. 107 [19 L. Ed. 348]. Where no answer is given by the witness, as in this case, this does not repel the presumption of injury, provided the question itself is sufficiently definite to indicate the nature of the answer sought to be elicited, and such answer is prima facie relevant, material, and otherwise legal.—*Roberts v. State,* 68 Ala. 515. In such a case, it would add little or nothing to the enlightenment of the court for the counsel to state what is proposed to be proved by the question,

because this is shown by the question itself, so far as to justify the admissibility of the answer. It is only when the question is so general in its nature that the answer sought to be elicited may as well be prima facie irrelevant and illegal testimony, as relevant and legal, that the exclusion of the question, and the refusal of the court to allow the witness to answer it, will be regarded as free from error. It is reasonable in this class of cases to require the counsel to inform the court what is proposed to be proved, so that the court may see that he seeks to elicit testimony which is proper to be admitted, and not that which is improper.—*Allen v. State,* 73 Ala. 23. If this is not done, it may be inferred by the court that, in view of the broad and comprehensive nature of the interrogatory, the answer of the witness might have been illegal, irrelevant, or even [non-] beneficial to the party. There should be no such presumption, however, in the first case, because the question is sufficiently narrow to preclude it, and the party has the legal right to examine the witness as to all relevant and legal matters within his knowledge. When the court denies this right, and refuses to permit its exercise, there is manifest error; and error imports the presumption of injury, unless it is clearly repelled. The adjudged cases in this state can all be harmonized in our opinion with this principle, although some expressions may be found which seem susceptible of a contrary construction.—*Burns v. State,* 49 Ala. 370. However this may be, the rule above announced is, in our opinion, the correct one." The rule as stated in the *Moog Case* was reaffirmed in *Parrish v. State,* 139 Ala. 16, 46, 36 South. 1012, 1021, where it was said, per Tyson, J.: "It is true the question was not answered, and it is not made to appear what the answer would have been, except from the question itself. But this is not necessary

to constitute reversible error, if the question is sufficiently definite to show that the answer would be prima facie relevant, and it indicates the nature of the answer. It is only when the question is so general that an answer cannot be said to be prima facie admissible that a party is required to inform the court what is proposed to be proven, so that the court may see that the evidence he seeks to elicit is proper. The question in this case clearly showed that it was intended to elicit an answer admissible and relevant, as tending to impeach the evidence of the witness to whom it was propounded. This is as clearly shown by the question as if the answer had been stated to the court.—*Phoenix Ins. Co. v. Moog,* 78 Ala. 284, 56 Am. Rep. 31; *Fincher's Case,* 58 Ala. 215." The same test is also applied as the basis for exclusion in *Sibley v. Smith,* 167 Ala. 158, 52 South. 27, citing the *Moog Case.* And in *Brent v. Baldwin,* 160 Ala. 635, 641, 49 South. 343, 346, in justifying the exclusion of a very general question, it was said, per Dowdell, C. J.: "The trial court was not informed as to what the defendant expected to elicit in answer to this question. It cannot be determined from the question whether the answer would be material or not. The materiality of the answer not being disclosed by the question, the trial court cannot be put in error in sustaining an objection to it." So in *Montgomery v. State,* 160 Ala. 7, 24, 49 South. 902, 909, the exclusion of the question was justified because "the court was not advised as to what the expected answer would be, and the question was susceptible of an answer that would have been wholly immaterial." In *B. R., L. & P. Co. v. Selhorst,* 165 Ala. 475, 51 South. 568, the exclusion was justified because the answer was prima facie irrelevant, and there was no statement of a purpose to show its relevancy. Other applications of the rule, in accord

with the foregoing will be found in *Nevers Lumber Co. v. Fields,* 151 Ala. 367, 371, 44 South. 81; *Sloss-Sheffield S. & I. Co. v. Sharp,* 156 Ala. 284-289, 47 South. 279; *Supreme Lodge v. Baker,* 163 Ala. 518, 50 South. 958; *Weller & Co. v. Camp,* 169 Ala. 275, 283, 52 South. 929, 28 L. R. A. (N. S.) 1106. The cases of *Tolbert v. State,* 87 Ala. 27, 6 South. 284, *Ross v. State,* 139 Ala. 144, 36 South. 718, *Smith v. State,* 142 Ala. 14, 39 South. 329, and *Hill v. State,* 156 Ala. 3, 46 South. 864, justified the exclusion of very general questions because the record did not show what answer was expected. This was merely a shorthand statement of the rule, and did not mean that the specific answer must be shown, but only that the answer would be relevant and competent evidence. We reaffirm the rule as stated in *Phoenix Ins. Co. v. Moog,* 78 Ala. 284, 308, 56 Am. Rep. 31, and which has always since then been the law in this state. Where a question on its face calls for an answer which would clearly be both relevant and competent evidence, it should be allowed; and its exclusion must be deemed erroneous, and prima facie prejudicial. Of course, the general rule always applies that a witness must be qualified to testify by knowledge of the matter inquired about.—*T. C., I. & R. R. Co. v. Hansford,* 125 Ala. 349, 365, 28 South. 45, 82 Am. St. Rep. 241; *A. G. S. R. R. Co. v. Linn,* 103 Ala. 134, 139, 15 South. 508; *Graham v. State,* 153 Ala. 38, 45 South. 580; *Williams v. City of Talladega,* 164 Ala. 633, 650, 51 South. 330.

A witness is presumed to be competent unless the contrary is made to appear.—*B. & L. & P. Co. v. Jung,* 161 Ala. 461, 49 South. 434, 18 Ann. Cas. 557. But he is not presumed to be qualified by knowledge, and his proponent must show that he has such knowledge, or has had the opportunity to know, if it does not other-

wise appear. Of course, this may as well be shown cirsumstantially, as by his direct affirmation. The absence of such a showing was stated by Judge Stone in *Tolbert v. State*, 87, Ala. 27, 6 South. 284, as one of the reasons that justified the exclusion of a question to a witness.

In the present case, the question to the witness Wrenn called for a clearly relevant and competent answer, and it appeared that he was an eyewitness, and had full knowledge of the fact. It is therefore within the rule we have declared, and its exclusion was error, and prejudicial so far as the record informs us.

The application for rehearing is overruled. All the Justices concur.