(94 South. 831)

SOVEREIGN CAMP, W. O. W., v. CRAFT.
(6 Div. 503.)

(Supreme Court of Alabama. Nov. 23, 1922.)

1. Insurance ⊚⟿723(8)—"Occupation" of insured is principal business of life.

Within an application for fraternal benefit insurance stating that the occupation of insured was that of carpenter, the term "occupation" means that which principally takes up one's time, thought, and energies, one's regular business or employment, the principal business of one's life, so that the statement might be found to be correct though at the time he was employed at a mine (citing Words and Phrases, First Series, Occupation).

2. Insurance ⊚⟿726½—"Employed in mines" within contract means regular employment.

Within a provision of the constitution of a fraternal benefit society, which was made a part of the benefit contract, requiring extra payments by those employed in mines, the phrase "employed in mines," when strictly construed, as it must be, refers to the habitual or customary employment of insured, and not to casual or incidental employment, although the phrase liberally construed might have the latter meaning.

3. Insurance ⊚⟿146(3) — Contract construed strictly against insurer.

In construing contracts of insurance, courts, being strongly against forfeitures, construe all conditions and obligations liberally in favor of the assured and strictly against the insurer, but will not do violence to the plain meaning of the language used.

4. Evidence ⊚⟿265(2)—Death certificate signed by officials of local lodge is prima facie evidence.

The recitals in the death certificate signed by the officials of the local lodge, stating the occupation of insured and that he was not engaged in any hazardous or prohibited occupation, was prima facie evidence of the facts recited and cast on the beneficiary association the burden of disproving them to avoid liability.

5. Discovery ⊚⟿79—Unresponsive answers to statutory interrogatories become evidence when introduced.

Where the answers of defendant's officer to the statutory interrogatories propounded by plaintiff were not responsive to the interrogatories, but were introduced in evidence by plaintiff, they became evidence in the case.

⊚⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Insurance ⬤748—Whether occupation of insured as "handy man" required him to work underground is competent.**

In an action on a fraternal benefit certificate where the defense was employment in a mine without payment of the increased assessment for hazardous occupation and an employee of the mine had testified that insured was carried on the company's pay roll as a handy man, it was error to sustain the objection to a question as to whether that occupation required him to work underground, for the stated reason it was not what his occupation required him to do but what he did do that was material, since a "handy man" is defined as a man of all work, and it was competent for defendant to show that he was employed to work underground, that is, that he had undertaken and was required to do so.

**7. Appeal and error ⬤1040(7)—Adverse rulings on demurrers to certain pleas held harmless.**

Rulings sustaining demurrers to certain pleas are not prejudicial to defendant, where it had the full benefit of all available defenses under the pleas which were allowed to go to the jury.

**8. Insurance ⬤793—Beneficiary held not entitled under constitution to recover amount for monument.**

Where a benefit certificate provided that the society should pay $100 for the erection of a monument as provided in the constitution of the society, and the constitution authorized such payment after proof the monument had been erected in conformity with the contract between the society and the contractor, the beneficiary is not entitled to recover the amount for herself, though she would have a right of action for breach of the company's contract.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Action by Annie F. Craft against the Sovereign Camp of the Woodman of the World. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Plaintiff, the widow of William R. Craft, sues to recover a benefit of $1,000 under a beneficiary certificate issued by the defendant association to said · Craft on May 17, 1916, and designating plaintiff as sole beneficiary.

Another count of the complaint alleges that said certificate contains an agreement by defendant "to pay to the plaintiff as beneficiary therein named the sum of $100 for the erection of a monument to the memory of said William R. Craft," payment of which has been refused by defendant: wherefore plaintiff claims said sum for said purpose.

Demurrers to the complaint being overruled, defendant pleaded the general issue and 19 special pleas. Demurrers were sustained to each of these pleas except those numbered 4, 5, 7, 9, and 18, and the cause went to trial on these special pleas and the general issue.

Plea 4 adopts the following portion of plea 3:

"Defendant is a fraternal benefit society.

"That on, to wit, May 8, 1916, William R. Craft made a written application to join defendant order in which he stated that his occupation was that of carpenter.

"Said application contained the following provision:

" 'I hereby certify, agree and warrant, that all the statements, representations and answers in this application, consisting of two pages, as aforesaid, are full, ·complete and true, whether written by my own hand or not; and I agree that any untrue statements, or answers made by me in this application, or to the examining physician or any concealment of facts in this application intentional or otherwise, or my being suspended, or expelled from or voluntary severing my connection with the order in any of its jurisdictions, or if I fail to comply with the laws, rules and usages of the order, now in force, or hereafter adopted, my beneficiary certificate shall become void and all rights of any person or persons thereunder shall be forfeited. I agree to pay all assessments and dues for which I may become liable while a member of the order, as required by its constitution and laws, and that the liability of the Sovereign Camp for the payment of benefits shall not begin until after this application shall have been accepted by a sovereign physician, a beneficiary certificate issued thereon, and personally delivered to me by an authorized person while I am in good health, until I shall have been obligated in due form and all the requirements of section 58 of the constitution and laws of said order have been complied with.' "

And adds the following:

"That at the time said application was made defendant's constitution and laws provided, section 56:

" 'In order to pay the death losses, disability benefits, monument obligations, emergency fund and Sovereign Camp general funds dues, every applicant admitted to membership, and to whom a beneficiary certificate is issued, shall annually pay to the Sovereign Clerk, in advance, an assessment based on their ages at the nearest birthday at date of entry (except as otherwise provided in sections 42 and 43 of the constitution and laws) as specified in the following table of rates:

" 'Annual—37 years of age—$14.40.

• " 'Provided, however, that member, should they so elect, may pay same in twelve monthly installments to the clerk of their camp on or before the first day of each month based on the following table of payment:

" '37 years of age monthly payments, $1.20.'

"Defendant's constitution and laws also provide as follows:

" 'Section 43, persons engaged in the following occupations, to wit:

" 'Those employed in mines not otherwise prohibited—their rates of assessments shall be three dollars and sixty cents per annum for each one thousand dollars of their beneficiary certificate in addition to the regular rate while engaged in such hazardous occupation.'

" 'If a member engages in any of the occupations or business mentioned in this section, he shall within thirty days notify the clerk of his camp of such change of occupation, and while so engaged in such occupation shall pay on each monthly installment of assessment thirty cents for each one thousand dollars of his beneficiary certificate in addition to the regular rate. Any such member failing to notify the clerk and to make such payments as above provided, shall stand suspended and his beneficiary certificate be null and void.'

"And defendant alleges that said Craft, in said application, warranted that his occupation was carpenter, and under said representation and warranty this defendant gave him the nonhazardous rate of $1.20 per month as provided in section 56 above set out, which warranty was untrue, in this, that said Craft was employed in a mine and under said employment said Craft had to work underground in said mine, which fact he concealed from the defendant; that under the provision of section 43, herein set out, said Craft should have paid $3.60 per annum or 30 cents per month in addition to the nonhazardous rate which was given him. But said Craft failed and refused, during the whole time, from the date of his application to his death, to pay said hazardous rate. Wherefore said beneficiary certificate is null and void and defendant is not indebted to plaintiff.' "

Plea 5 is the same as plea 4 down through the sections of defendant's constitution therein set out, and it then concludes:

"Defendant alleges that said Craft was employed in a mine, and for such hazardous occupation agreed to pay this defendant $3.60 per annum or 30 cents per month while so employed. But said Craft failed and refused to pay any of said hazardous assessment. Wherefore said certificate became null and void, and defendant is not indebted to the plaintiff."

Plea 7 is:

"Defendant * * * tendered to the plaintiff the amount due her, to wit, $47.50, before this action was commenced, and now brings the money into court."

Plea 9 is as follows:

"9. This is a fraternal benefit society.

"That the said William R. Craft, in his application made to defendant, in which he sought to become a member and to obtain the policy and certificate sued on, which application is made a part of the certificate sued on, warranted that the statements made by him in said application were true, and defendant avers that said application was executed and signed by said Craft in which he stated that his occupation was carpenter, and defendant avers that said statement was not true, but was untrue, and that said Craft was not a carpenter, but was, in fact, a handy man in and about an ore mine, and that the duties of such employment required him to work underground in said mine as well as outside of said mine; and by reasons of said untrue statement in said application the said policy or certificate is void."

Plea 18 is as follows:

"The defendant adopts all of plea 4 from the beginning down to, through, and inclusive of section 43 of the constitution as therein set out as though that part of said plea was recopied in full here, and in addition thereto adds the following:

"And defendant alleges that said Craft engaged in the occupation or business of being employed in an ore mine, and under said business or occupation the said Craft had to work underground in said mine, and under the provisions of section 43 as herein set out Craft should have paid on each monthly installment of assessment 30 cents in addition to the regular rate, but said Craft failed to make such payments of said hazardous rate, and, by reason of such failure, became suspended, and his beneficiary certificate became null and void.

"Wherefore the defendant is not indebted to plaintiff."

C. H. Roquemore, of Montgomery, for appellant.

Defendant was due the affirmative charge as to the third count of the complaint, claiming $100 for a monument. 80 Miss. 546, 32 South. 4. Defendant should have been permitted to show what Craft was required to do under his occupation at the mine, and to show that he was required to work under the ground. It was error to sustain demurrers to pleas setting up a breach of warranty on the part of Craft. 206 Ala. 18, 89 South. 528; 89 South. 58; 206 Ala. 562, 90 South. 801.

John T. Glover and Charles A. Calhoun, both of Birmingham, for appellee.

Insurance policies are construed strictly against the insurer, and liberally in favor of the assured, especially with reference to forfeitures. 204 Ala. 667, 86 South. 737; 206 Ala. 18, 89 South. 528; 196 Ala. 327, 71 South. 404. Representations and warranties as to one's occupation or employment have reference to the time of the making thereof. Niblack, Ben. Soc. (2d Ed.) 782; 205 Ala. 601, 88 South. 865. Occupation means that which practically consumes one's time and energies, especially one's regular business or employment. The word does not necessarily mean present occupation, and temporarily engaging in another business does not result in the loss of one's occupation. 163 Ala. 518, 50 South. 958. The plaintiff, being the sole beneficiary in the certificate sued on, may recover the $100 for a monument. 7 Ala. App. 255, 60 South. 1006. The mere fact that deceased was killed while in an ore mine does not bar a recovery in this action. 19 R. C. L. 1247; 119 Mo. 653, 25 S. W. 390, 25 L. R. A. 149; 111 Wis. 279, 87 N. W. 293, 55 L. R. A. 185, 87 Am. St. Rep. 860; 127 Wis. 606, 107 N. W. 8, 7 Ann. Cas. 566.

SOMERVILLE, J. In denial of plaintiff's right to recover, under the beneficiary certifi-

cate exhibited by her, defendant sets up two defenses: (1) The invalidation of the certificate by reason of the member's warranty or representation that his occupation was that of a carpenter, when in fact he was not a carpenter; and (2) the invalidation of the certificate by reason of the member's employment in a mine, and his failure to pay the thereby increased assessment of $3.60 per annum, as required by section 43 of the constitution and laws of the society.

These defenses embraced the only contested issues of fact in the case.

Defendant's theory is: (1) That the member's representation—"my occupation is carpenter"—was a warranty that he did no work except that of a carpenter under his existing employment; and (2) that if the member regularly worked, or did any work, in the course of his employment, whether as a carpenter or otherwise, within the mine at which he was employed, this brought him within the class of "those employed in mines," within the meaning of section 43 of defendant's constitution and laws.

[1] 1. According to the New Standard Dictionary, "occupation" means "that which principally takes up one's time, thought, and energies; especially, one's regular business or employment; also, whatever one follows as the means of making a livelihood." This definition of the word has been approved by this court as its proper meaning when used in like manner in a beneficiary certificate like the one before us. Supreme Lodge, etc., v. Baker, 163 Ala. 518, 50 South. 958. In that case it was said the word was not necessarily limited in its application to one's present occupation; and that one having a regular occupation might be temporarily out of its pursuit and engaged in other business, and yet properly give his regular occupation as his true occupation.

It was further said that one who "has once had and followed an occupation continues to have it until he has abandoned it, either by quitting work in it without intention or ability to resume it, or by engaging in some other occupation not of a mere temporary character."

In Un. Mut. Acc. Ass'n v. Frohard, 134 Ill. 228, 25 N. E. 642, 10 L. R. A. 383, 23 Am. St. Rep. 664, it was said that "occupation" is "that which occupies or engages the time or attention; the principal business of one's life; vocation; employment; calling; trade." See, also, 6 Words and Phrases, 4907.

Under these principles, as applied to the evidence adduced, the jury were justified in finding that the deceased member's occupation, at the time of his application for membership and thereafter, was that of a carpenter; and hence that the certificate was not to be avoided as for a misrepresentation in that behalf.

"To be employed in anything means not only the act of doing it, but also to be engaged to do it; to be under contract or orders to do it." U. S. v. The Catherine, 25 Fed. Cas. 332, 338, No. 14755; U. S. v. Morris, 39 U. S. (14 Pet.) 464, 475, 10 L. Ed. 543; Ritchie v. People, 155 Ill. 98, 40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315. It imports, therefore, not only the status of being employed, but actual service under such employment.

[2] 2. The phrase "employed in mines" is, we think, fairly susceptible of two interpretations. According to the liberality or the strictness of judicial intendment, it may mean habitually, or customarily, or usually employed in mines (Wilson v. Gray, 127 Mass. 98, 99); or it may signify an employment which only casually or incidentally requires presence and service in mines.

[3] In construing contracts of insurance, the settled rule in this state is:

"That courts, being strongly inclined against forfeitures, will construe all the conditions of the contract and the obligations imposed, liberally in favor of the assured, and strictly against the insurer." Tubb v. Liverpool, etc., Ins. Co., 106 Ala. 651, 660, 17 South. 615, 617.

In the application of this rule it is understood, of course, that violence will never be done to the plain meaning of the language used.

In harmony with this rule, as observed by the editor of Annotated Cases upon a review of the decisions:

"In construing insurance policies which contain provisions for changes in the occupation of the insured, or which classify risks according to occupation, it is the general rule that to be engaged in a certain occupation or employment is not inconsistent with the incidental performance of acts, either of service or pleasure, which do not come within the stated vocation of the insured, and that the doing of such acts does not operate to remove the insured from the vocation in which he is classed." Stevens v. Modern Woodmen of Am., 127 Wis. 606, 107 N. W. 8, 7 Ann. Cas. 566, note 568.

The evidence showed without dispute that the deceased member was employed in service at an ore mine at the time of his application for membership and continuously thereafter until his death in 1919 from contact with a live wire. How that accident happened, what service the deceased was performing, or whether he was performing any service at all, does not appear from the evidence.

[4] Plaintiff testified that he was doing "carpenter work" at the mine "on the outside." In the death certificate signed by the local Consul Commander, and other officials of the order, they stated that—

"The last occupation of the deceased immediately prior to his death was that of car-

penter, and that he had been engaged in such occupation for several years. His previous occupation was the same for years. He was not engaged in any hazardous or prohibited occupation."

These recitals were prima facie evidence of the facts recited, and cast on defendant the burden of disproving them. Sovereign Camp, etc., v. Marshall, 17 Ala. App. 32, 81 South. 246; Sovereign Camp, etc., v. Burrell, 204 Ala. 210, 85 South. 762.

[5] In answering the statutory interrogatories propounded by plaintiff to defendant, its officer Yates stated that the deceased member was, at the time of his application for membership, engaged in the occupation of "handy man" in an underground mine, and worked both underground in the mine and outside; that he was employed, and in the course of his employment worked, in a mine underground. These answers, though not responsive, were introduced in evidence by plaintiff, and, of course, became evidence in the case.

[6] One Richburg, chief clerk of the timekeeper at the mine where deceased was employed, testifying as a witness for defendant, stated that during the time from 1916 until his death deceased was carried on the company's pay roll as "handy man."

Defendant's counsel then asked him "whether or not that occupation required him to work underground in the mine." On the objection of plaintiff that "it was not what the occupation required him to do; it is what he did do," the court excluded the question, and defendant duly excepted.

We think that this ruling was clearly and prejudicially erroneous. Lexicographers define "handy man" as a man of all work; and it was competent for defendant to thus show that deceased was employed to work underground in the mine—that is, that he had undertaken, and was required, to do so. The undertaking of the worker is a material element of his employment—as much so as the doing of the work. Authorities supra.

Moreover, if one is employed in a capacity which requires him to do certain things, and he serves for a long time in that capacity, it is a reasonable inference of fact that he has done those things in the course of his service; such an inference being in accord with common knowledge and experience.

It may have been that the witness did not know the duties and requirements of deceased's employment, but that was not the ground of the objection. The objection, as framed, was not well taken, and should have been overruled.

[7] Apart from the ruling above condemned, we find no error of material prejudice to defendant with respect to the trial of the main branch of the case. There are many assignments of error relating to adverse rulings on the demurrers to defendant's special pleas. It will suffice to say, however, that whether those rulings, or any of them, were erroneous, is not of material consequence, for the reason that defendant had the full benefit of all available defenses under the pleas which were allowed to go to the jury; and the real and only issues in the case, as to which we have recited all the evidence, were fairly submitted under appropriate instructions.

[8] As to the separate and additional claim for $100 for the erection of a monument to the memory of the deceased member, we are clear in the conclusion that it cannot be recovered by the plaintiff in this action. The beneficiary certificate contains this paragraph, upon which the claim is founded:

"The amount, if any, remaining unpaid on this certificate at his death shall be paid to his beneficiary. There shall also be paid the sum of one hundred dollars, for the erection of a monument to his memory *as provided in the constitution and laws of this society.*" (Italics supplied.)

Section 70 of the constitution and laws provides that—

"The Sovereign Commander shall cause to be contracted for and substantially placed to the memory of every deceased member a monument of marble or granite, * * * of the full value and cost to this society of $100."

And further that—

"When satisfactory evidence has been received by the Sovereign Commander that a monument has been erected in full compliance with the contract entered into between this society and the contractor, he shall direct that a warrant be drawn on the beneficiary [fund] in favor of the contractor in payment of the same."

These provisions not only give no support to plaintiff's asserted right to collect and administer this monument fund, but plainly deny it. No doubt the provision in the certificate, as qualified by the laws of the society, expresses a contractual obligation in favor of the beneficiary, for the breach of which an action will lie; but the complaint makes no such case. On this count of the complaint the general affirmative charge should have been given by defendant as suggested, and its refusal was error.

Our attention is called to the case of Woodmen of the World v. Wright, 7 Ala. App. 255, 60 South. 1006, wherein, upon a certificate which provided for the payment of $100 for a monument, the Court of Appeals held that that amount was due to, and recoverable by, the plaintiff beneficiary. It does not appear from the report of the case that the certificate there sued on contained the qualifying proviso found in quoted paragraph of the certificate here involved. If it did not, the decision was doubtless correct; but, if it did,

the court overlooked the qualification, and was clearly in error.

For the errors noted above, the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.